UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAMEEKA DASH,<br><br>   *Plaintiff*,<br><br> v.<br><br>MERIDIAN PUBLIC CHARTER SCHOOL,<br><br>   *Defendant*. | Civil Action No. 25-067 (TJK) |

## MEMORANDUM ORDER

Shameeka Dash, a former employee of Meridian Public Charter School, sued the school for retaliation and discrimination based on her gender and national origin. She brings three claims against Meridian: for retaliation, creation of a hostile work environment, and discriminatory termination. Meridian moves to dismiss, arguing that Dash fails to state a claim as to all counts, in some cases because she failed to exhaust her administrative remedies. The Court agrees that Dash's amended complaint fails to state a claim, so it will grant Meridian's motion. But it will give Dash, who proceeds pro se, the chance to file a second amended complaint, if she so chooses, to properly plead the claims she alleges for which she has exhausted her administrative remedies.

**I. Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when she pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's

favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A plaintiff's obligation to provide the grounds of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Since Dash proceeds pro se, the Court must construe her filings liberally. *See Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (citation omitted). But that does not absolve her of the need to plead facts that plausibly establish a claim for relief. *See Bickford v. United States*, 808 F. Supp. 2d 175, 179–80 (D.D.C. 2011). At this stage in the proceedings, and because Dash proceeds pro se, the Court considers factual allegations from all her filings, not just her amended complaint.[1] *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

**II.    Analysis**

As noted above, Dash brings three claims against Meridian: one for retaliation (Count I), another for a creation of a hostile work environment (Count II), and a third for discriminatory termination (Count III). She bases all her claims in gender- or national origin-based discrimination, so the Court construes them as brought under Title VII. 42 U.S.C. § 2000e *et seq*. For the reasons explained below, Dash has failed to state any claim, so the Court will dismiss her amended complaint.[2]

---

[1] For this reason, the Court considers Dash's allegations in her supplemental filings, ECF Nos. 14, 15, 16, and 17. It also considers the EEOC complaint attached to Meridian's motion to dismiss, of which it may take judicial notice. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Turner v. Buttigieg*, No. 23-cv-1665 (LLA), 2024 WL 4346332, at *4 (D.D.C. Sept. 30, 2024).

[2] To the extent that Dash seeks to bring claims under the Americans with Disabilities Act

A.      **Retaliation (Count I)**

Title VII's anti-retaliation provision forbids an employer from "discriminat[ing] against [an] employee[] . . . because [s]he has opposed any practice" outlawed by Title VII or because she "has made a charge, testified, assisted, or participated" in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). To state a retaliation claim under Title VII, a plaintiff must plead facts to allow the Court to plausibly infer that "(1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007); *see Poole v. U.S. Gov't Publ'g Off.*, 219 F. Supp. 3d 80, 84 (D.D.C. 2016).

A "materially adverse action" described in the second element is one that would have "'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 52, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The Supreme Court has cautioned that, in the retaliation context, "it is important to separate significant from trivial harm," and plaintiffs may not allege retaliation based on "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Put another way, "Title VII . . . does not set forth a general civility code for the American workplace." *Id.* (internal citation omitted). And as for the third element, a plaintiff must "allege[] sufficient facts going to causation to render [her] claim plausible." *Harris v.*

---

("ADA") and Maryland state law, the Court will dismiss them as well. To plead an ADA claim, a plaintiff must allege that she is a qualifying individual with a disability under the ADA. *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 94 (D.D.C. 2021). Dash has not done so; in fact, she makes no mention of a disability anywhere in her complaint. The Court will also dismiss any claims purportedly brought under the Maryland Code, because Dash has pleaded no facts suggesting that Maryland law applies. Dash alleges that she was the victim of discrimination at Meridian, in the District of Columbia. *See* ECF No. 5 at 2, 7–8. She does not allege that any relevant events happened in Maryland, or that any relevant party is a citizen or resident of Maryland.

*D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015).  One way this can be accomplished is by showing a close temporal proximity between the two events.  *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 200–01 (D.D.C. 2012) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Dash alleges that Meridian retaliated against her for complaining to her supervisor about a school counselor who was sexually harassing her.  She alleges she suffered the following:

> I experienced harsh treatment such as stalking, invasion of privacy, intimidation, making impossible demands, changing my office abruptly, setting unreasonable expectations for deadlines, scheduling meetings last minute while having students that were already on my case load attempting to sabotage me.  Lastly, my office was moved to the lower level which was very condescending and humiliating.

ECF No. 5 at 7.

Dash's retaliation claim fails because she has failed to allege the "factual and temporal information" needed to survive a Rule 12(b)(6) motion.  *Poole*, 219 F. Supp. 3d at 84.  What she alleges is not described in sufficient detail for the Court to plausibly infer that she suffered a materially adverse action inflicted by Meridian and caused by her protected activity.

With respect to the requirement that she plead a materially adverse action, Dash's most concrete allegations, that her office was "abruptly . . . moved to the lower level," and that meetings were "schedule[ed] . . . last minute" are more like workplace slights that do not do the trick.  ECF No. 5 at 7.  On the other hand, her claims of "stalking," "invasion of privacy" and "intimidation"—depending on the particular facts—could get her over the hump.  In any event, though, Dash does not even specify who supposedly took these actions—a meaningful distinction in the context of Title VII suits, which require her *employer* to retaliate against her, not merely a co-worker.  *See Wiley*, 511 F.3d at 155.  And some of her supplemental filings seem to suggest that a co-worker was the culprit.  *See, e.g.*, ECF Nos. 14-1, 17-1.

4

Dash also fails to allege facts that support an inference of causation. True, she alleges that these actions against her happened "[d]ue to [her] reporting [the harassment] to [her] supervisor." ECF No. 5 at 7. But this is just the sort of bare "recitation of the elements of a cause of action" that fails to state a claim. *Iqbal*, 556 U.S. at 678. And she alleges no temporal information about the sequence of events that would support an inference of causation.

### B.     Hostile Work Environment (Count II)

Title VII makes it unlawful for any employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "While a Title VII plaintiff need not establish a prima facie case of discrimination at the pleading stage, she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination from the complaint." *Turner v. Buttigieg*, No. 23-cv-1665 (LLA), 2024 WL 4346332, at *3 (D.D.C. Sept. 30, 2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002)).

"[A] plaintiff may establish a violation of Title VII by proving that discrimination . . . has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To state a hostile work environment claim at the motion to dismiss stage, an employee must allege facts that, if true, would support a reasonable inference that misconduct occurred that was so serious that it changed "a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* at 67; *see also Moore v. Castro*, 192 F. Supp. 3d 18, 46 (D.D.C. 2016). In determining whether a work environment is hostile, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Supreme Court has emphasized that "'the

5

ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'" are not serious enough to create a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting Barbara Lindemann & David Kadue, *Sexual Harassment in Employment Law* 175 (1992)). Nor are "offhand comments [or] isolated incidents (unless extremely serious)." *Id.*

Dash alleges that she was subjected to a hostile work environment because of both her national origin and gender. First, Dash states that she "was treated unfavorably because, of [her] country of origin being an American." ECF No. 5 at 7. According to Dash, she "was excluded from [her] position because, of a preference treating [her] less favorably because of their association" with a coworker of Nigerian descent. *Id.* She claims she was subjected to unfair treatment including "verbal abuse while working, writing false emails regarding [her] work performance, [and] blocking [her] preventing [her] to get out of [her] office," which constituted a hostile work environment. *Id.* Second, Dash alleges, cryptically, that: "Subsequently, Gender discrimination pertaining to unwanted sexual advances creating a hostile working environment." *Id.*

### 1.     National Origin-Based Hostile Work Environment

Dash's national origin-based hostile work environment claim must be dismissed because she failed to exhaust administrative remedies.

Title VII requires that a plaintiff must exhaust administrative remedies by "timely filing a charge with the EEOC or a state agency" before seeking recourse in federal district court. *Jones v. District of Columbia*, 273 F. Supp. 2d 61, 64 (D.D.C. 2003); *see* 42 U.S.C. § 2000e-16(c). A plaintiff must also have received from the EEOC "a 'right to sue' letter." *Jones*, 273 F. Supp. 2d at 64. She may only bring a Title VII lawsuit raising those claims which she has raised in an EEOC complaint—or claims that are "like or reasonably related" to such claims. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). The requirement to file an EEOC claim "serves the important

6

purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'" *Id.* (quoting *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 472 n.325 (D.C. Cir. 1976)). "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Id.* Exhaustion is an affirmative defense which the defendant "bears the burden of pleading and proving." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Once the defendant has met its burden, the plaintiff then "bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Id.* Failure to exhaust remedies amounts to failure to state a claim under Rule 12(b)(6). *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 18 (D.D.C. 2015).

Dash has not exhausted her administrative remedies as to her national origin-based hostile work environment claim. Meridian argues that Dash filed an EEOC complaint with the District of Columbia Office of Human Rights in December 2024, but that her EEOC complaint only alleged gender-based discrimination, making no reference to national origin. ECF No. 9-1 at 4–5. In support of this argument, Meridian attaches Dash's signed EEOC complaint, which makes no mention of her nationality, national origin, or discriminatory treatment aimed at her on those bases. ECF No. 9-2. True, Dash alleges some of the same underlying treatment in her EEOC complaint— she claims, for instance, that she was "stalk[ed]" and subjected to a hostile work environment— but she alleges that the reason for that treatment was related to her gender, not her national origin. ECF No. 9-2 at 1. National origin-based discrimination is not similar enough to gender-based discrimination or retaliation such that Meridian would have been adequately notified of Dash's claim to investigate and respond to it. *See Park*, 71 F.3d at 907; *Sellers v. Nielsen*, 376 F. Supp. 3d 84, 96 (D.D.C. 2019). For all these reasons, Dash's national origin-based hostile work environment claim must be dismissed for failure to exhaust her administrative remedies.

### 2. Gender-Based Hostile Work Environment

Dash's gender-based hostile work environment claim fails, too, but for a different reason. She does not plead facts sufficient to support a plausible hostile work environment claim based on her gender. In particular, Dash does not plead facts that, if true, would support a reasonable inference that she suffered discrimination based on her gender that was "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal citations omitted). Even assuming her claim is based on the sexual harassment she described in connection with her retaliation claim, her allegations are too vague and cursory, do not describe how the harassment impacted her job, and do not tie the harassment to *Meridian*, as opposed to a co-worker.

### C. Discriminatory Termination (Count III)

Title VII makes it unlawful for any employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Dash alleges that she "was terminated because off [sic] [her] national origin." ECF No. 5 at 7. She alleges that her supervisor was of Nigerian descent, "the same exact national origin as the other school counselor" whose behavior Dash had reported. ECF No. 5 at 7. In response, Dash alleges, this supervisor "deliberately jeopardized [her] job by creating false occurrences and placing [her] on a performance improvement plan to scheme and create tactics and strategies to result in a job loss." *Id.* Ultimately, Dash says, her supervisor and the school's principal decided not to renew her contract. *See id.*

As with Dash's national origin-based hostile work environment claim, Meridian argues that Dash has failed to exhaust administrative remedies. *See* ECF No. 9-1 at 6. Again, Meridian

has shown that Dash did not file an EEOC claim alleging national origin-based discriminatory termination. *See id.*; ECF No. 9-2. Thus, this claim must also be dismissed.

* * *

Given the uncertainty surrounding Dash's vague allegations of "stalking," "invasion of privacy" and "intimidation," and her pro se status, the Court will permit her to file a second amended complaint that properly pleads her claims for retaliation and gender-based hostile work environment with specific facts that state a claim for relief. But it would be futile to allow her to do so for her claims of national origin-based hostile work environment and national origin-based discriminatory termination, for which she has not exhausted her administrative remedies. *Ponce v. Billington*, 652 F. Supp. 2d 71, 74 (D.D.C. 2009).

### III. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**. It is further **ORDERED** that the amended complaint, ECF No. 5, is **DISMISSED**. It is further **ORDERED** that, within 30 days, Plaintiff may file a second amended complaint in which she may try to properly plead her claims for retaliation and gender-based hostile work environment only. If she does not, the Court will dismiss the case as well.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 16, 2026